## JOHN BARNES v. FREDERICK C. BROWN.

*Findings of fact—Contributory negligence.*

1. A finding of fact will not be disturbed if there is a *scintilla* of testimony to support it.
2. A finding of law, based upon the rule that the plaintiff in a negligence case was called upon to exercise a greater degree of care than persons of ordinary care and caution would be expected to exercise under the circumstances, cannot be sustained.

Error to Calhoun. (Hooker, J.) Argued April 6, 1893. Decided June 1, 1893.

Negligence case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Rienzi Loud,* for appellant, contended:

1. If one uses every precaution which a reasonable man would use under the circumstances, he is not to be held responsible for omitting other precautions which are conceivable, even though, if he had used them, the injury would certainly have been avoided; citing Shear. & R. Neg. § 11.

*Herbert E. Winsor,* for defendant, contended:

1. The conduct of neither the defendant nor his servant' was wanton, willful, or reckless; citing *Bouwmeester v. Railroad Co.,* 63 Mich. 559.
2. Plaintiff did not use ordinary care in driving his team; and it was a want of such care on his part which contributed to produce the collision and injury, and this precludes his recovery; citing *Mabley v. Kittleberger,* 37 Mich. 360; *Railroad Co. v. Miller,* 25 Id. 274

LONG, J. This cause was tried in the Calhoun circuit court without a jury, and the following findings of fact and law made:

"1. Plaintiff, a farmer, was driving his farm team, hitched to a buggy containing himself and wife, upon a highway which was quite muddy. His horses were walking.

"2. Defendant had sent his team, in charge of his hired man, upon an errand. A rope, somewhere from 12 to 20 feet long, had been tied to the rear axle-tree of this wagon, to aid in moving a barn. Before starting, it was thrown into the wagon, except one end, which remained tied to the axle-tree, for the reason that defendant was unable to untie it.

"3. Defendant's team, proceeding upon a trot, overtook plaintiff, and passed him, with the rope dragging behind, it having gotten out of the wagon without the knowledge of the driver.

"4. As the rope passed his wagon it was seen by the plaintiff and his wife, and one of the horses, at sight of it, began to kick, and jumped, and said horses ran;

95 MICH.—37.

breaking loose from the buggy, throwing plaintiff and his wife out, injuring both.

"5. Defendant's man, seeing the trouble, tried to avoid a collision by driving to the side of the road, but the buggy wheel struck his outer wheel, at which point the team left the buggy, throwing plaintiff and his wife out.

"6. The off whippletree was broken, and the left wheel of defendant's wagon was the one that was hit.

"7. Plaintiff's horse did not become unmanageable when he first kicked at the rope alongside of him. Plaintiff did not at that time stop his team, but allowed them to walk on, and the rope drew under his feet, which frightened him, when he kicked again, and became unmanageable, as stated.

"8. Had plaintiff stopped his horses when the horse first kicked at the rope, the rope would not have gotten under the horses' feet, as it would necessarily have followed the wagon.

"9. As the defendant's wagon began to turn in before the rope had fully passed plaintiff's horses, it was inevitable that the rope would draw into the road under the feet of plaintiff's horses, unless prevented by their stopping, or by the superior speed of defendant's team. Plaintiff was in a position to see and know this, while the driver of defendant's team was not, and was ignorant of the fact that the rope was dragging. Plaintiff and his wife were both injured, whereby plaintiff suffered damage to the amount of $200.

## "LAW.

"1. Defendant is responsible for the conduct of his servant, the driver, on this occasion.

"2. It was not actionable negligence to pass plaintiff in the highway with a rope dragging from the end of the wagon. It was negligence to attempt to turn in before plaintiff under circumstances which would be likely to bring the rope under the feet of plaintiff's horses, if both teams continued to advance at their respective gaits.

"3. Plaintiff was legally required to exercise due care to avoid danger, and was as much bound to know that the rope might frighten his team as defendant's driver, especially after he had seen the rope, and after his horse first kicked at it. By not at once stopping his team while the rope was yet outside of the wagon track, he contributed to the accident."

Judgment for costs for defendant.

Exception was taken to the finding of fact that the plaintiff could have stopped his team in time to avoid accident, and was therefore guilty of contributory negligence in not doing so. Exceptions were also taken to the conclusions of law. The evidence is all returned, and the claim is now made in this Court that there is not a *scintilla* of evidence to support the finding that the plaintiff could have stopped his team before the rope dragged beneath his horses' feet. The plaintiff testified:

"I was driving my horses along the track, and this team came along behind me, and as quick as it got up to me, driving a pretty good gait, they hauled out to go by me, and just far enough to skip my wagon, with a rope drawing behind; and when it got up so that my horse saw it, it kicked with one foot, and by that time the team was far enough ahead of me so he turned in to get on the track again, and that pulled the rope under my horses, and then they made a jump to get over it, causing the accident."

He was asked, "When did you first see the rope?" and answered: "I didn't see it until it got up opposite my team. At that instant my horse caught sight of it, and kicked with one foot at it, and by that time the team was far enough ahead of me to turn in, and that brought the rope right under my horses, and scared them. They jumped to get away from it."

Plaintiff was asked on cross-examination: "Did you see the rope before it got under your horses' feet?

"*A.* I saw it as it came alongside.

"*Q.* And you had an opportunity to have swung off to the right and get away from it?

"*A.* No, sir; there were some grubs right there.

"*Q.* You could have stopped your horses, couldn't you?

"*A.* No, I couldn't. Just as soon as they caught sight of the rope they became unmanageable."

This testimony is undisputed. It is contended, however, that, inasmuch as the plaintiff's team was on a walk, he should have stopped at the instant he saw the rope. But plaintiff gives the reason why he could not do this. His team

was walking; the defendant's team was being driven by on a trot; and the instant defendant's team got far enough by to turn in, it did so, thereby dragging the rope directly under the feet of the plaintiff's horses. It is possible that, had the plaintiff had sufficient presence of mind or foresight, he might have anticipated, when he first saw the rope dragging, that the defendant's driver would turn so quickly in front of him that the rope would draw under his own horses unless he instantly stopped them. It must be admitted that the driver of defendant's team was negligent in letting the rope drag and turning in and drawing it under the feet of plaintiff's horses. It is also quite apparent that the plaintiff, under the testimony, cannot be said to have acted carelessly. There is no testimony in the case by which the court below should have so found. If there could be found a *scintilla* of testimony to support this finding, it could not be disturbed under our repeated rulings; but from the testimony of the plaintiff—which stands wholly uncontradicted—it appears that the injury was occasioned solely by the negligent conduct of defendant's driver; that the horse kicked, and the team became unmanageable from the instant the rope drew alongside of them; and when the rope dragged beneath their feet they ran away, and injured the plaintiff. The plaintiff was not called upon to exercise any greater degree of care than persons of ordinary care and caution would be expected to exercise under the circumstances. The rule laid down by the learned circuit judge required the plaintiff to exercise a greater degree of care than this. It presumes that a person of ordinary care at the instant would have anticipated the turning in of the defendant's team so that the rope would necessarily drag beneath the horses' feet; and again, it presumes that the plaintiff could have stopped his team when he first saw the rope, while the testimony conclusively shows that the plaintiff's horses

became unmanageable and began kicking at the time they saw the rope dragging at their side.

The judgment of the court below must be reversed, and new trial ordered.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred. HOOKER, C. J., did not sit.